## CARL S. FIELDS *v.* DIRECTOR, PATUXENT INSTITUTION

[No. 165, September Term, 1967.]

*Decided September 13, 1968.*

Before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

PER CURIAM.

On 9 December 1963 the applicant pleaded guilty to a charge of storehouse breaking with intent to steal goods of the value of less than $100 in the Criminal Court of Baltimore. The court rendered a verdict of guilty and imposed a sentence of imprisonment for a term of not more than 18 months. He was referred to Patuxent Institution on 9 March 1964 and a report filed 7 July 1964 recommended that he be committed as a defective delinquent. He was found to be a defective delinquent by Judge Meyer M. Cardin presiding in the Criminal Court of Baltimore without a jury on 8 March 1965 and committed to Patuxent Institution. He did not apply for leave to appeal from that determination. On 16 March 1967 he filed a petition in proper person for a hearing to have his defective delinquency redetermined. On 28 August 1967 after a hearing in the Criminal Court of Baltimore before Judge James K. Cullen, presiding without a jury, it was redetermined that he was a defective delinquent and he was recommitted to Patuxent Institution. On 18 September 1967 he filed an application for leave to appeal in proper person complaining that a requested postponement for

10 months of his redetermination hearing had been denied by the court. Counsel was appointed to represent him in connection with the application and on 23 January 1968 an "Application for Leave to Appeal" was filed on his behalf by his counsel alleging three errors:

1) there was no legally sufficient evidence to support the finding;
2) the original sentence had "long since expired";
3) "many of the records were prepared by unqualified persons."

We shall treat it as an amendment to the application filed in proper person. The docket entries show under date of 26 January 1968: "Application for Leave to Appeal filed," but this document is not in the record. Counsel for the applicant filed a one page "Memorandum in Support of Application for Leave to Appeal" on 24 January 1968. In it he re-states the allegations of error set forth in the document of 23 January but enlarges on the first allegation merely by stating that the "only witness to be produced by the State was Dr. Harold Boslow, who read from various records prepared by members of the Staff at the Patuxent Institution; some reports were prepared by social workers and some by Dr. Boslow himself," and by asserting that the applicant testified that "he felt he had served his original sentence and that he had improved sufficiently to function normally in society." It is also stated in the memorandum that the applicant "seeks an Appeal on the theory that he is being incarcerated at Patuxent in the same manner as any prisoner at the Maryland Correctional Institution where he was originally sentenced" but he does not elaborate on this statement. No authorities are cited in the memorandum.

Assuming that the matter of denial of the postponement of the hearing is properly before us, it appears that the request was made as a result of a report of examination dated 1 May 1967 submitted by a private psychiatrist in which it was recommended that the hearing be deferred for a period of about 8 to 10 months. The doctor said: "He has improved a great deal since his stay at Patuxent Institution, but I do not believe that his improvement has reached a level that he can be discharged

* * *. There is an excellent chance that his improvement will continue and at that time it would be sufficient to prove that he wouldn't be a danger to himself or to others if and when released." We cannot say that the lower court abused its discretion in refusing the postponement. The future improvement of the status of the applicant was a matter of conjecture at best. *Green v. Director,* 3 Md. App. 1, 4.

The redetermination hearing now in question was held before the court sitting without a jury, so that the judgment of the lower court will not be set aside on the evidence unless clearly erroneous. *McDonough v. Director,* 3 Md. App. 539, 541. It is apparent from a review of the evidence that the lower court's finding that the applicant was still a defective delinquent was not clearly erroneous.

That the original sentence imposed on the applicant had "expired" is of no relevance.[1] Md. Code (1967 Repl. Vol.) Art. 31B, §§ 1-19 make it clear that the Legislature intended that one who came within the definition of a defective delinquent must remain incarcerated until his demonstrated "persistent aggravated antisocial or criminal behavior", caused by mental deficiency or emotional unbalance or both and constituting an actual danger to society was not, by reason of passage of time or treatment or both, likely to reoccur and, therefore, his release was "reasonably safe for society" (§ 5). *Barnes v. Director,* 240 Md. 32. See *Director v. Daniels,* 243 Md. 16, 47; *Boitnott v. Director,* 1 Md. App. 10; *Sas v. Maryland,* 334 F. 2d 506 (4 Cir. 1964).

The allegation that "many of the records were prepared by unqualified persons" is a bald assertion without supporting facts in the record and as such affords no ground for appeal. *Kroneburg v. Director,* 244 Md. 734. It is not improper to admit in

---

1. *Code,* Art. 31B, § 9 (b) provides that when a defendant is determined to be a defective delinquent and committed to Patuxent, the sentence for the original criminal conviction, or any unexpired portion thereof, shall be and remain suspended. He shall no longer be confined for any portion of said original sentence, except as provided in the Article, but shall remain in the custody of Patuxent. But he receives full credit against a sentence for time spent in Patuxent. *Caparella v. State,* 214 Md. 355.

78

evidence statements and opinions of staff members of Patuxent
Institution because they were partly based on reports of others.
*McDonough v. Director, supra,* 544.

We do not agree with the applicant's bald assertion that he
is incarcerated at Patuxent Institution in the same manner as
any prisoner in a penal institution. It has been established that
the sole objective and purpose of the Defective Delinquency
Act was not penal but an effort to segregate a known group of
mentally disordered people who are found guilty of criminal
acts by confining them in an institution housing only members
of their group in a sole effort to protect society and provide
treatment to effect, if possible, a cure of the illness. *Director v.
Daniels, supra,* at 38.

*Application denied.*